264 N.J. Super. 334 (1993)
624 A.2d 990
L.T., APPELLANT,
v.
N.J. DEPT. OF HUMAN SERVICES, DIV. OF FAMILY DEVELOPMENT, RESPONDENT. L.W., APPELLANT,
v.
N.J. DEPT. OF HUMAN SERVICES, DIV. OF FAMILY DEVELOPMENT, RESPONDENT. L.M., APPELLANT,
v.
N.J. DEPT. OF HUMAN SERVICES, DIV. OF FAMILY DEVELOPMENT, RESPONDENT. J.W., APPELLANT,
v.
N.J. DEPT. OF HUMAN SERVICES, DIV. OF FAMILY DEVELOPMENT, RESPONDENT. M.M., APPELLANT,
v.
N.J. DEPT. OF HUMAN SERVICES, DIV. OF FAMILY DEVELOPMENT, RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued March 22, 1993.
Decided May 3, 1993.
*336 Before Judges PETRELLA, LONG and D'ANNUNZIO.
Cary L. Winslow argued the cause for appellants (Passaic County Legal Aid Society, attorneys).
Dennis J. Conklin, Senior Deputy Attorney General, argued the cause for respondent (Robert J. Del Tufo, Attorney General, attorney).
Leighton Holness argued the cause for amicus curiae Legal Services of New Jersey.
The opinion of the court was delivered by D'ANNUNZIO, J.A.D.
In these consolidated appeals, appellants seek to overturn the final decisions of the New Jersey Department of Human Services, Division of Family Development (DHS) determining that they had exhausted their rights to temporary rental assistance (TRA) because they had been receiving TRA for more than the twelve-month limit established in N.J.A.C. 10:85-4.6(e)2. TRA is a form of extended shelter assistance supplementing emergency shelter assistance (EA). N.J.A.C. 10:85-4.6(a). EA is available for a maximum of "five calendar months." N.J.A.C. 10:85-4.6(e)1.
Appellants' principal contention is that the termination of their shelter assistance, thereby rendering them homeless, violates this State's General Public Assistance Law. N.J.S.A. 44:8-107 et seq. This contention is based on Williams v. Dep't of Human Services, 116 N.J. 102, 561 A.2d 244 (1989) (Williams I), judgment deferred and matter remanded, 121 N.J. 589, 583 A.2d 297 (1989) (Williams II), judgment entered, 121 N.J. 667, 583 A.2d 351 (1990) (Williams III).
*337 In Williams I, the Supreme Court reversed an Appellate Division ruling invalidating the five-month limit on EA shelter assistance. We had stated:
to the extent that such regulations terminate such benefits based solely upon expiration of a prescribed period without additional support to meet the further needs of individual recipients, they cannot stand. In doing so, we confess our keen awareness of the frustration which the Commissioner must obviously be experiencing by reason of the limitation of funds. However, terminating all shelter benefits in such a manner necessarily assumes that the needy's homelessness problem will be resolved within that time which has proven to be untrue.

[228 N.J. Super. 529, 538, 550 A.2d 505 (App.Div. 1988) (citations omitted).]
In its opinion in Williams I, the Court observed that subsequent to the Appellate Division's decision "DHS's Director of the Division of Public Welfare outlined in a February 14, 1989, memorandum, recommended measures to enhance post-EA shelter availability among the GA population if the five-month limitation were reinstated." Williams I, supra, 116 N.J. at 116, 561 A.2d 244. After discussing the recommendations in the director's memorandum, the Court reversed the Appellate Division subject to a condition, stating:
Hence, we shall issue a judgment that the regulation be deemed valid if, with the conditions noted hereafter, DHS shall have set in place by December 1, 1989, through proper administrative procedures, the new programs that it believes will make reasonably certain that the individuals previously housed in motels will find shelter and eventually housing elsewhere. We leave to the discretion of the agency the form of the agency procedures that will do this, either by a change in program directive or by a change in the regulations themselves.

[Id. at 121, 561 A.2d 244.]
In Williams II, the Court, on plaintiffs' motion, deferred entry of a final judgment. The Court determined that "a factual dispute exists over whether the respondent ... has set in place the proposed administrative changes and financial commitments that were `to make reasonably certain that [the EA claimants] previously housed in motels will find shelter and eventually housing elsewhere.'" Williams II, supra, 121 N.J. at 589, 583 A.2d 297.
*338 Due to this dispute, the Court remanded to DHS for the development of a record by the Office of Administrative Law. It required an initial decision by an Administrative Law Judge (ALJ) and a final decision by DHS. We reproduce in its entirety the Supreme Court's final judgment in this matter which is reported in Williams III at 121 N.J. 667-68, 583 A.2d 351:
This matter having been remanded on December 28, 1989, to the Department of Human Services (DHS) to develop the record on which the Court would predicate its decision whether to defer the effective date of the Court's judgment in the within appeal; and
It appearing that in response to the remand, the Chief Administrative Law Judge (ALJ), to whom DHS had referred the matter to develop the factual record, conducted an extensive hearing and submitted an initial decision and recommendation finding that the administrative changes implemented by DHS did not yet "make it reasonably certain that [General Assistance (GA)] recipients will be assured of continuing shelter upon the termination of emergency assistance [EA]," but that "defects in DHS's safety net program * * * can be cured by a rulemaking clearly fixing the responsibility for insuring the provision of continuing shelter for a recipient whose emergency assistance has expired;" and
It appearing that the Acting Commissioner of DHS has, with what plaintiffs call "commendable candor," substantially adopted the recommended findings of the Chief ALJ (with one reservation concerning Fiscal Year 1991 appropriations) and has instituted rulemaking to embody in regulations the programs that will make it "reasonably certain" that post-EA/GA claimants will find shelter, including specifically the "delineation of responsibility to agencies of government at the local level clearly stating their obligation to provide continuing shelter to eligible GA claimants upon termination of five months of EA";
It is ORDERED that final judgment is entered in accordance with the Court's opinion of August 1, 1989, 116 N.J. 102, 561 A.2d 244; and it is further
ORDERED that the challenged regulation, N.J.A.C. 10:85-4.6, is upheld, conditioned on adoption of the proposed regulations.
Thus, the shelter scheme which appellants now attack was thoroughly explored and evaluated by the ALJ and the Commissioner and approved by the Supreme Court in Williams III. A major effect of the new regulations was to tack on to the five-month maximum period of EA shelter, TRA for up to a twelve-month period.
We reject appellants' implied contention that Williams I requires funding of shelter assistance for a welfare client for as long as the client needs it. The ALJ flagged the issue in her Initial Decision when she stated that "[o]ne nagging question, which *339 remained unanswered as of the hearing, is what is to happen to a client at the close of his or her twelve months of rent subsidy." Initial Decision, Williams v. Dep't of Human Services, OAL Dkt. No. HPW 38-90, at 22 (February 9, 1990).
In his Final Decision, the Commissioner agreed with the ALJ that "[t]he issue of what happens to a client at the close of his or her twelve months of post EA of [sic] rent subsidy needs resolution." Final Decision, Williams v. Dep't of Human Services, OAL Dkt. No. HPW 38-90, at 6 (March 1, 1990). This statement does not constitute an undertaking by DHS that it would assume sole responsibility for resolution of that issue. To the contrary, the Commissioner made clear his view that homelessness was a multi-dimensional problem beyond his department's ability to solve. He stated:
While DHS will continue to do its part in meeting its responsibilities, it must be noted that DHS does not have the sole responsibility in this area. There are several factors which contribute to homelessness and which are routinely identified across a variety of surveys, studies and research reports. DHS' emergency assistance programs are designed to meet the short-term need for emergency shelter, and it is unrealistic to consider them as long-term solutions to the factors listed below.

[Id. at 9.]
The factors he identified were: a decline in the number of low cost housing units such as rooming houses and boarding homes; mental illness; drug and alcohol abuse; and unemployment. Consistent with this analysis, the Commissioner announced that "[g]iven the above, it must be the goal of the Department to strengthen the intergovernmental and public/private partnerships to address the needs of the homeless general assistance recipient, and to assure that the significant resources devoted to this purpose now and in the future are utilized in the most effective and efficient manner." [Id. at 10.]
Continuing this theme of shared responsibility for amelioration of homelessness, the Commissioner stated:
On the programmatic side, DHS' goal in future planning and policy development must be aimed toward maximizing all available resources in order to provide a *340 continuum of services to address the needs of each segment of the homeless population, including those eligible for General Assistance. In moving toward this goal, I find that, in addition to promulgating regulations as discussed herein, the Department of Human Services must strengthen its relationships with other Departments, counties, municipalities, the private voluntary sector, and the business community. This will be accomplished in a multifaceted approach.

[Id. at 12.]
Finally, in his concluding paragraphs the Commissioner emphasized "that the Emergency Assistance program is just that, an emergency program. It is not a program designed to address the chronic need for low income housing in New Jersey." Id. at 14. The regulations adopted by DHS implement the Commissioner's multi-dimensional philosophy. See N.J.A.C. 10:85-4.6(c).
We conclude that the current regulations, including the twelve-month TRA limit, implement the Initial Decision of the ALJ and the Commissioner's Final Decision which were the basis of the Supreme Court's final order in Williams III and, therefore, the DHS is not in violation of Williams or the General Public Assistance Law.
Appellants contend that they have a right to shelter under Article I, paragraph 1 of the New Jersey Constitution which provides:
All persons are by nature free and independent, and have certain natural and unalienable rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing, and protecting property, and of pursuing and obtaining safety and happiness.
The New Jersey Supreme Court previously has found inherent in Article I, paragraph 1, the guarantees of due process and equal protection of the laws. Hills Development Co. v. Bernards Twp., 103 N.J. 1, 40, 510 A.2d 621 (1986); Abbott v. Burke, 100 N.J. 269, 294, 495 A.2d 376 (1985); Right to Choose v. Byrne, 91 N.J. 287, 450 A.2d 925 (1982); Southern Burlington Cty. N.A.A.C.P. v. Mt. Laurel Twp., 67 N.J. 151, 174-75, 336 A.2d 713, cert. denied, 423 U.S. 808, 96 S.Ct. 18, 46 L.Ed.2d 28 (1975). However, the Court has never interpreted that language to impose an affirmative obligation on the government to finance social services.
*341 In Franklin v. Dep't of Human Services, 225 N.J. Super. 504, 543 A.2d 56 (App.Div.), aff'd, 111 N.J. 1, 543 A.2d 1 (1988), we addressed the issue of whether Article I, paragraphs 1 and 2, of the New Jersey Constitution imposed an affirmative obligation upon State government to provide certain necessities of life for indigent persons, including shelter, and found there was no support for imposing such an obligation under those constitutional provisions, their language, or the prior decisions of the New Jersey Supreme Court. Id. at 522, 543 A.2d 56.
Appellants rely on Right to Choose v. Byrne, 91 N.J. 287, 450 A.2d 925 (1982). In that case the Court found that a statute restricting medicaid funding to abortions necessary to save the life of the mother violated the New Jersey Constitution. However, the Court did not interpret Article 1, paragraph 1, to impose an affirmative obligation upon the government to fund all abortions. Id. at 310, 450 A.2d 925. Rather, the court found that the exclusion of medically necessary abortions from a system providing all other medically necessary care for indigents violated equal protection guarantees. Ibid. Indeed, the Court specifically stated: "[T]he right of the individual [under Article I, paragraph 1] is freedom from undue government interference, not an assurance of government funding." Id. at 307 n. 5, 450 A.2d 925.
For similar reasons, appellants' reliance on the Mt. Laurel cases does not support their position. In Southern Burlington Cty. N.A.A.C.P. v. Mt. Laurel Twp., supra, 67 N.J. at 174-75, 336 A.2d 713 (1975) (Mt. Laurel I) and Southern Burlington Cty. N.A.A.C.P. v. Mt. Laurel Twp., 92 N.J. 158, 208-09, 456 A.2d 390 (1983) (Mt. Laurel II), the Court held that developing municipalities may not manipulate their land use regulations to foreclose housing opportunities for lower income persons without violating the State Constitutional requirements of substantive due process and equal protection. Although the Court found that municipalities must act affirmatively through their land use regulations to provide a realistic opportunity for low and moderate income housing, the Court did not impose an obligation on State or local government to construct affordable housing for those persons. *342 Southern Burlington Cty. N.A.A.C.P. v. Mt. Laurel Twp., supra, 92 N.J. at 221, 456 A.2d 390.
Finally, appellants contend that In re Quinlan, 70 N.J. 10, 355 A.2d 647 cert. denied, 429 U.S. 922, 97 S.Ct. 319, 50 L.Ed.2d 289 (1976) considered along with Robinson v. Cahill, 62 N.J. 473, 303 A.2d 273 (1973), cert. denied, 423 U.S. 913, 96 S.Ct. 217, 46 L.Ed.2d 141 (1975), stand for the proposition that the right to life, and its accompanying right to obtaining safety and happiness must include as a constituent part the right to shelter. To support this contention appellants quote the Robinson Court's statement that "no need is more basic than food and lodging." Robinson, supra, 62 N.J. at 495, 303 A.2d 273. Appellants cite this quote out of context. Despite the recognized importance of these basic needs, the Robinson court was stressing that such rights have not been recognized as "fundamental rights" under traditional equal protection analysis. Id. at 494-97, 303 A.2d 273. Moreover, the import of the Quinlan decision was that an individual's right to privacy under Article I, paragraph 1 outweighed the state's interest in the "preservation and sanctity of human life." Quinlan, supra, 70 N.J. at 41, 355 A.2d 647. To interpret those cases in the manner suggested by appellants would be to go well beyond their respective holdings.
We conclude that there is no right under New Jersey's Constitution to government-funded housing.
Appellants also contend that DHS' refusal to provide continued shelter assistance violates its regulations.
Each appellant has received TRA for more than twelve months: L.T. received it for twenty-eight months before the termination order and L.W. received it for twenty-two months. L.M., J.W. and M.M. received TRA for fourteen months. Shelter assistance to them was terminated because the twelve month limit had expired and DHS declined to exercise its discretion to grant *343 additional extensions.[1]
Appellants contend that in denying additional extensions, DHS violated N.J.A.C. 10:85-4.6(e)3iii, which provides:
3. Monthly EA shelter extensions beyond the five-month maximum EA period shall be authorized by the MWD to individual(s) because of any of the following: iii. The EA recipient has satisfactorily fulfilled his or her permanent housing search responsibilities or was determined unable to make such permanent housing searches and continues to require additional EA shelter assistance.
We are persuaded that this contention is without merit because there is nothing in the regulations to suggest that DHS is obligated to provide perpetual assistance. To the contrary, in his Final Decision the Commissioner made it clear that the GA shelter assistance program is not a permanent solution to the homelessness problem. Moreover, emergency shelter and TRA are separate approaches to the same problem. TRA is a flat monthly grant. Emergency shelter under N.J.A.C. 10:85-4.6(e)1 provides the "actual cost for adequate emergency shelter arrangements ... for a specified temporary period not to exceed five calendar months." The regulation relied on by appellants and quoted above applies to emergency shelter and not to TRA. Finally, on the records before us, we are persuaded that DHS has not abused its discretion in declining to further extend appellants' entitlement to shelter funds.
Appellants final contention is that the municipal welfare department failed to develop for each of them a written plan to secure permanent shelter in accordance with N.J.A.C. 10:85-4.6(c)(5), and, therefore, shelter assistance may not be terminated. We are persuaded that this contention is without merit. Plans were prepared for L.T., L.W. and L.M. It does not appear that the issue was raised below with regard to N.J. and M.M. Moreover, there is nothing in the regulations entitling appellants to continuous shelter assistance in the absence of an effective service *344 plan. Finally, we agree with appellants' basic premise that there is nothing in the record to indicate that shelter is available to them in light of their severely limited incomes of $140 per month, plus food stamps.[2] Consequently, we conclude that the record does not demonstrate a nexus between the alleged violation of N.J.A.C. 10:85-4.6(c)(5) and appellants' status as homeless persons.
Affirmed.
NOTES
[1] A panel of this court stayed termination of assistance to L.T. and L.W. pending the appeal. Another panel of this court and the Supreme Court denied the applications of L.M. and J.W. for stays.
[2] Appellants are classified as employable and, therefore, receive the basic general assistance cash grant of $140 per month. N.J.A.C. 10:85-4.1(b). That amount is only 25% of the standard of need "to maintain a safe and decent life." N.J.A.C. 10:85-4.1(d). See Matter of Rulemaking, N.J.A.C. 10:82-1.2 and N.J.A.C. 10:85-4.1, 117 N.J. 311, 566 A.2d 1154 (1989).

On the eve of the filing of this opinion counsel informed us that L.T.'s claim for disability benefits has been approved by the Social Security Administration and as a result "he now has monthly income sufficient to cover his rent at the ... YMCA."